UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIDRO ROMAN,<br><br>    Petitioner,<br><br>v.<br><br>S. FRAUENHEIM, Warden,<br><br>    Respondent. | Case No. 16-cv-02985-HSG (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS; DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 15 |

Petitioner, a *pro se* prisoner, has filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has moved to dismiss the petition on the grounds that it is: (1) procedurally defaulted, and (2) untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d). Petitioner has filed an opposition, and respondent has filed a reply. For the reasons given below, the motion will be granted.

## BACKGROUND

In 1994, petitioner was convicted by a San Mateo County jury of second degree murder with personal use of a firearm. Petition at 2.[1] He was sentenced to 19 years to life in state prison.

---

[1] All page numbers used herein refer to those affixed to the top of the page by the Court's electronic filing program.

Ex. A.[2] The conviction was affirmed on appeal in 1995. *Id.* The California Court of Appeal's online Register of Actions shows that petitioner did not seek direct review in the California Supreme Court. The state appellate court summarized the events of the crime as follows:

> On November 4, 1993, [petitioner] and Jose Manuel Gonzales (also known by the nickname "Mafia") got into an argument over a business exchange transaction. At one point, Mafia attacked [petitioner] and began beating his head repeatedly against a door jamb. A neighbor broke up the fracas after which both men traded angry threats and insults. Mafia vowed to come back, "shoot up" [petitioner]'s house and kill him, his wife and his children.
>
> On the night before the shooting, Mafia telephoned [petitioner] and told him he wanted to fix things between them one way or the other. [Petitioner] told him not to come over and that he did not want to talk with him.
>
> The next morning Mafia rode up to [petitioner]'s house on his motorcycle. [Petitioner], armed with a revolver in his waistband, met him at the door. The two men stood facing each other and spoke for a few minutes. Suddenly, [petitioner] pulled out his gun and fired several shots. As Mafia fell backwards and stumbled over his motorcycle, [petitioner] came toward him and fired again at close range. He fired a final shot into Mafia's head from about two to three feet away. Of the four gunshot wounds sustained, only the head wound was sufficient to cause death.

Dkt. No. 15 at 12-13.

On August 19, 2014[3], petitioner filed a habeas petition in the San Mateo County Superior Court, in which he claimed that the prosecution violated its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963)[4], by allegedly failing to disclose to defense counsel (1) arrest reports of the victim in unrelated incidents involving sales of narcotics and possession and concealment of firearms, and (2) evidence that a second weapon was at the crime scene. Ex. B,

---

[2] All references herein to exhibits are to the exhibits submitted by respondent in support of the motion to dismiss.

[3] The record before the Court does not show when petitioner's first state habeas petition was filed, but respondent represents that it was filed on August 19, 2014. Petitioner agrees that it was stamped "filed" at the state superior court on August 19, 2014 but asserts that he does not remember the date it was handed to prison officials for mailing. Dkt. No. 26 at 2.

[4] In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court has since made clear that the duty to disclose such evidence applies even when there has been no request by the accused. *United States v. Agurs*, 427 U.S. 97, 107 (1976).

Petition at 9, 13, 16-17. As evidence of the former, petitioner submits the allegedly suppressed police reports concerning incidents involving the victim. Petition at 50-79. As evidence of the latter, petitioner submits the San Mateo County Sheriff's Office Crime Scene Report. *Id.* at 91-94. The report does not specifically state that a second weapon was found at the crime scene. Rather, it states that a "spent nominal caliber 38, semi-jacketed bullet" was found in the living room of the residence of the yard where the incident took place. *See id.* Petitioner appears to argue that this was evidence of a second weapon because he had been armed with a caliber .357 revolver. Petition at 16-17. Nothing in the record shows that a second weapon was ever recovered from the crime scene, from the victim, or elsewhere. Petitioner's opening brief on appeal conceded that no gun was recovered from the victim. *Id.* at 38.

Petitioner argued that suppression of these materials was prejudicial to his self-defense claim at trial insofar as they would have helped show that he was defending himself against the victim, who had a propensity for violence and purportedly had a weapon. Ex. B, Petition at 15-18. Petitioner asserted that he only learned of the allegedly suppressed evidence after counsel was appointed to assist him in 2012 in state court proceedings in relation to DNA evidence. Petition at 9; Dkt. No. 1-1 at 6; Dkt. No. 26 at 1.[5]

The Superior Court denied the petition on February 11, 2015. Ex. B. The court found that petitioner had not proffered any evidence that the victim's arrest record had not been provided to defense counsel, and found that the material had "scant exculpatory value." *Id.* The court also held, citing *In re Clark*, 5 Cal. 4th 750, 765 (1993) and *In re Robbins*, 18 Cal. 4th 770 (1998), that petitioner's claim that the police withheld reports pointing to a second weapon being at the crime scene was procedurally barred because the petition was unduly delayed. Ex. B.

On March 23, 2015, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. Ex. C. On May 22, 2015, that court issued an Order stating:

> [Petitioner] has filed a petition for writ of habeas corpus alleging that evidence discovered in 2012 shows a key witness perjured himself, and the prosecutor withheld exculpatory evidence, at [petitioner]'s trial for the 1993 murder of

---

[5] Petitioner states that the state superior court, in 2013, denied relief in connection with the DNA evidence and that the denial was affirmed on appeal. Dkt. No. 26 at 1-2.

3

> Jose Manuel Gonzales. The petition is procedurally barred because it is untimely. *In re Sanders* (1999) 21 Cal.4th 697, 703-704. Further, the record petitioner presents was not presented to the superior court (*In re Steele* (2004) 32 Cal.4th 682, 692), and, in any event, does not substantiate his claim for habeas relief (*In re Swain* (1949) 34 Cal.2d 300). For all of these reasons, the petition for writ of habeas corpus is denied, and the request for the appointment of counsel is denied as moot.

*Id.*

On September 30, 2015, petitioner filed another petition for writ of habeas corpus in the court of appeal. Ex. D. That court denied that petition without an opinion on February 29, 2016. *Id.* On April 20, 2016, the California Supreme Court denied review without an opinion. Ex. E.

The instant federal petition for writ of habeas corpus was filed in this Court on June 3, 2016. Therein, petitioner again asserts that the prosecution violated *Brady* by failing to disclose exculpatory evidence showing that the victim posed a threat to petitioner at the time of the shooting, forcing petitioner to act in self-defense.

## DISCUSSION

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question, and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In those cases in which the state court decision is based on an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 750. The state bears the burden of proving the adequacy of a state procedural bar. *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).

**A.     Independent and Adequate Procedural Rule**

As noted, the California Court of Appeal on May 22, 2015 issued a reasoned order in which it denied petitioner's state habeas petition because, *inter alia*, it was not timely filed. Under *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), the subsequent summary denials of petitioner's state habeas petitions by the California Court of Appeal, in petitioner's second petition to that court, and the California Supreme Court also constituted rejections on timeliness grounds. *See id.* at

801-06 (holding that where the last reasoned opinion on a claim expressly imposes a procedural bar, it should be presumed that a later decision summarily rejecting the claim did not silently disregard the bar and consider the merits of the claim).

The United States Supreme Court has determined that California's timeliness rule is an independent state ground adequate to bar habeas corpus relief in federal court. *See Walker v. Martin*, 562 U.S. 307, 321 (2011). That rule requires state habeas petitions to be filed without "substantial delay," as measured from the time the petitioner knew or reasonably should have known the basis for the claim, which is sufficiently specific to be regarded as a "firmly established" rule. *Id.* at 317-18. The rule is also "consistently applied," even though the state court may deny a petition on the merits if that is the easier path; "[d]iscretion enables a court to home in on case-specific considerations and to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Id.* at 319-20.

Petitioner contends that there is no default because the California Court of Appeal did not clearly and expressly invoke the default. To the contrary, the California Court of Appeal in its May 22, 2015 order clearly stated that "[t]he petition is procedurally barred because it is untimely" and cited to *In re Sanders*, 21 Cal. 4th 697, 703-04 (1999). *In re Sanders* discusses the procedural bars against untimely state habeas petitions and "insist[s] [that] a litigant mounting a collateral challenge to a final criminal judgment do so in a timely fashion." 21 Cal. 4th at 703. The fact that the court denied the petition on alternative grounds does not change this analysis. *See Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim."). *See also Moran v. McDaniel*, 80 F.3d 1261, 1269 (9th Cir. 1996) (concluding that Nevada Supreme Court rested its dismissal of petition on independent state procedural grounds because it stated that any discussion of merits was strictly for purpose of demonstrating that petitioner's procedural defaults could not be overcome by showing of cause and prejudice). Nor does the brevity of the court's opinion alter this analysis. *See Walker*, 562 U.S. at 310 (holding California courts may signal that a habeas petition is denied as untimely by simply citing to the controlling decisions).

Petitioner also contends that the California Court of Appeal was in error in dismissing the

5

petition as untimely.  Petitioner's argument is not grounds for avoiding the procedural bar.  "A basic tenet of federal habeas review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground." *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995).  Because the California courts are the final expositors of California law, the state court's conclusion here that the state's timeliness rule was not satisfied is binding here.  *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (federal courts lack jurisdiction to review state court applications of procedural rules; refusing to review state court's finding of procedural default).

Thus, respondent has sufficiently demonstrated that the instant petition is procedurally barred from federal review.

**B.     Cause and Prejudice Exception**

Procedural default, however, can be overcome if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  The "cause standard" requires the petitioner to show that "'some objective factor external to the defense impeded counsel's efforts' to raise the claim." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  "Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule," the Supreme Court has noted that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." *Murray*, 477 U.S. at 488 (internal quotation and citations omitted).  As to the prejudice prong, petitioner bears the burden of showing, "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  "To ascertain the level to which such errors taint the constitutional sufficiency of the trial, they must 'be evaluated in the total context of the events at trial.'" *See Paradis v. Arave*, 130 F.3d 385, 393 (9th Cir. 1997) (quoting *Frady*, 456 U.S. at 169).

Here, petitioner does not even attempt to show cause and prejudice. Nor is there anything in the record to suggest he could make the requisite showing. To the extent petitioner argues that he personally did not know of the purportedly exculpatory evidence until 2012 or later, there is still no showing that the prosecution withheld the evidence from defense counsel or that the evidence was not otherwise known to the defense. *See Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) ("There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose.") (omission in original) (internal quotation marks omitted). Indeed, there is no reason to believe that petitioner's own trial counsel would not have obtained the crime scene report, which is the only evidence petitioner offers to suggest there was a second weapon at the crime scene. Petitioner thus fails to establish cause.

Furthermore, even assuming, arguendo, the prosecution actually failed to disclose the evidence and petitioner somehow lacked knowledge of the facts behind the evidence, the Court finds the claimed error did not work to petitioner's "*actual* and substantial disadvantage, infecting his entire trial." *Frady*, 456 U.S. at 170. Specifically, the record shows that the threat of violence posed by the victim was presented at trial. The California Court of Appeal, on direct appeal, noted that the victim's nickname was "Mafia" and that the evidence at trial was that he had threatened to shoot up petitioner's house and kill him, his wife and children. Ex. A. The appellate court also noted petitioner's testimony at trial that the victim announced just prior to the shooting that he had come back to kill petitioner and that the victim made a sudden move towards his waistband causing petitioner to fear that the victim was reaching for a weapon. *Id.* The opening brief petitioner attached to his petition discusses the uncontradicted evidence that the victim severely beat up petitioner just a few days before the shooting. Petition at 36-37. The purportedly suppressed evidence would have added little information about the victim's character that was not already apparent from the evidence. Viewing the "total context of the events at trial," including information reasonably known to the defense, the Court cannot say the introduction of the purportedly new exculpatory evidence would have changed the verdict. *Paradis*, 130 F.3d at 393.

Finally, if petitioner had no prior knowledge of the spent nominal caliber 38 bullet at the crime scene or of the victim's criminal history, then the evidence would have been of questionable relevance to his self-defense claim anyway. Under California law, self-defense requires an actual and reasonable belief in the need to defend. *People v. Humphrey*, 13 Cal. 4th 1073, 1082 (1996). Objective reasonableness is judged from the viewpoint of a "reasonable person in a similar situation and with similar knowledge" as the defendant. *Id.* at 1082-83. By way of the instant petition, petitioner appears to be claiming that, prior to 2012, he had no knowledge that the victim had a criminal record, or that a spent bullet was found at the crime scene. If that is the case, he cannot show that these factors were relevant to his interpretation of the victim's behavior, and he therefore cannot show that the trial court would have admitted the evidence for purposes of establishing self-defense. Thus, petitioner cannot show that he was prejudiced as a result of the claimed error.

## C. Miscarriage of Justice Exception

If a state prisoner cannot meet the cause and prejudice standard, a federal court may still hear the merits of procedurally defaulted claims if the failure to do so would constitute a "miscarriage of justice." *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992). Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citation omitted).

> [I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Id.* at 316; *see Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) ("[T]he miscarriage of justice exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt.").

The required evidence must create a colorable claim of actual innocence, as opposed to legal innocence as a result of legal error. *Schlup*, 513 U.S. at 321. It is not enough to show that a reasonable doubt exists in the light of new evidence, instead, a petitioner must show "that it is

8

more likely than not that 'no reasonable juror' would have convicted him." *Id.* at 329. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. This does not mean a petitioner need always affirmatively show physical evidence that he did not commit the crime with which he is charged. *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002). Rather, a petitioner may pass through the *Schlup* gateway by promulgating evidence "that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup*, 513 U.S. at 327). The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors. *Schlup*, 513 U.S. at 329.

Here, as discussed above, petitioner fails to show that the victim's arrest record or police reports documenting the crime scene were not known to defense counsel or could not have reasonably been obtained by defense counsel based on information already known to the defense. Thus, petitioner fails to establish that the evidence is actually new. Further, as also discussed above, the allegedly new evidence would not show that the facts of the offense were substantially different from what they appeared to be at the time of trial and may not have been admitted at trial at all. Thus, petitioner fails to show that this evidence would have made it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Gandarela*, 286 F.3d at 1086.

Accordingly, the Court finds that the instant petition is procedurally defaulted for purposes of federal habeas review, and respondent's motion to dismiss will be granted.[6]

**CONCLUSION**

For the foregoing reasons:

1. Respondent's motion to dismiss the instant petition is GRANTED.

---

[6] Because the Court dismisses the petition as procedurally defaulted, it need not address respondent's alternative argument that the petition is also untimely.

9

2. Petitioner has not shown "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is DENIED.

3. The Clerk shall terminate all pending motions, enter judgment, and close the file.

**IT IS SO ORDERED.**

Dated: May 30, 2017

HAYWOOD S. GILLIAM, JR.
United States District Judge